The argued case this morning is number 2012-1085, CHECKPOINT v. ALL TAG. Mr. Palmeschad. Good morning. In a footnote to its November 2011 order, the District Court declared this case exceptional for the sole reason that plaintiffs never looked at the accused product in relation to the 555 patent. Yet three times in litigation, at the Daubert stage, at the Directed Verdict stage, at the JMLL stage, the District Court issued rulings that rejected that very basis as to why the case was exceptional. These are not the hallmarks of an exceptional case. These are not the hallmarks of a Section 285 case. Don't you think it's reasonable to know what you're suing about? And I think that the plaintiff in this case did know what he was suing about. You have to remember that the plaintiff in this case had been engaged in litigation with both the defendant and also the defendant's admitted predecessor company, which also admitted that they had made the same tags as the present predecessor company for about ten years before this lawsuit had been filed. The basis for the Court's exceptional case finding had been rejected three times during the course of the litigation. And that's why it's so fundamentally important that that sanctions order be reversed. Because of the chilling impact it will have on our adversarial system, where litigants are expected to argue their case consistent with the rulings of the trial court. And it's the trial court's contemporaneous rulings during the litigation that demonstrate that why this record does not support a finding that the case was objectively baseless. You're saying her holding was based solely on the failure to examine the product and surrounding circumstances should be reversed. I don't think the surrounding circumstances. I have looked at this footnote, I've looked at this order 25 times. And every time I read it, the only conclusion that I reach is that the case was declared exceptional because of the failure to look at the accused product. And I think that that decision is clear error for a number of reasons which I'll talk about. Remember, the district court issued three rulings that undermine any notion that this case was so unreasonable that no reasonable litigant could expect to succeed on the merits. And to put this in context, the court adopted the plaintiff's claim construction. Thus, the only issue to be resolved at trial was whether or not the accused product had a through-hole, or as the court described it, a space between the two conducting layers free of dielectric material that provided the means of deactivating the tag through short circuit. So that was the only issue at trial. At the dogger stage, the court denied the defendant's motion to exclude plaintiff's infringement expert, Dr. Zahn. Now, as we know, at the dogger stage, the court must assess the reasoning and methodology of the proposed expert testimony to make sure that it has a reliable foundation. The court must act as a gatekeeper to keep out irrelevant and unreliable evidence. What's the test, or what should be the test to justify the suit? To justify the suit? Yeah. That they have a good basis to assert a claim that the accused product infringes the claim of the patent. In other words, which may or may not include actual inspection of the product. I don't think that this court has ever held that to prove a patent infringement case, you must have direct evidence of infringement. This court has said several times that circumstantial evidence is sufficient. In fact, there are instances where circumstantial evidence may be preferred, as this court noted in the liquid dynamics case. If we go back to the dogger stage, though, it's clear, based on that court's ruling, that the court had accepted the evidence and theory of infringement that plaintiffs were proposing to prove at trial. Did the expert inspect the device that was made by the prior company in Switzerland? That issue was disputed, Your Honor. And basically what happened is Dr. Zahn inspected a tag that he understood had been manufactured by Alltag Belgium. In fact, remember, it wasn't until the eve of trial that defendants came into court and said, that's not an Alltag Belgium label, that's our predecessor, Alltag Switzerland. And Dr. Zahn, upon hearing that, went to the Alltag Belgium website and he looked for the label that he had inspected. He found the label that he had inspected. In fact, he had matched what he believed were the serial numbers to the label he had to the label that was on the website. You said he did inspect the product of the prior product. That was the contention throughout the trial. Not only was that the contention throughout the trial, but the webpage that Dr. Zahn inspected was entered into evidence. Now, of course, defendants had a different story. They claimed it wasn't an Alltag Belgium label, it was a predecessor company, Alltag Switzerland, and therefore you accused the wrong product. But that argument was contrary to all the arguments that defendants made throughout the duration of the case in support of their Lachi's argument. They claimed they were the same company. They claimed that they were the same labels. Was there an explicit Dalbert hearing for this expert, for Dr. Zahn? Yes, there was. And during that hearing, the defendant's argument was that Dr. Zahn should not be allowed to testify because his methodology was unsound because he had not inspected the accused product. Plaintiff's position was that he had, in fact, inspected one of the accused products, the Alltag Belgium Switzerland petition we just talked about, but that also he could rely on other evidence, such as a method patent that described the process under which the labels had been manufactured, and that this description of the process of how they were manufactured ultimately would inform about the structure of the product, and that evidence would then be probable infringement. And what's really interesting, if you look at the exceptional case file, which is based on SureTech, as to the failure to look at the accused product, but then you look at the district court's ruling on Dalbert, and the district court hears the arguments and then says, quote, having reviewed the SureTech decision, the court is going to deny the defendant's motion to preclude Dr. Zahn. And what's really important about this is that the district court at that point in time is acting as a gatekeeper. It is tasked to determine whether or not the testimony of Dr. Zahn is based on a reliable foundation, and by allowing him to testify and denying the Dalbert motion, the court necessarily found that Dr. Zahn's testimony was based on a reliable foundation, and the court allowed Dr. Zahn to testify without limitation. Sponge, let me ask you one question. What was the hook for Dr. Zahn to be able to look to the two patents? Several things. First of all, there was testimony that, first of all, up until April 2001, the patent was made under the 466 patent, and that testimony came from the CEO of Alltag Belgium, Mr. Bolz. In fact, there's an interesting exchange during the trial, and Mr. Bolz is on the stand, and his own attorney is asking him whether or not reviewing those two patents would tell you everything about how the labels are manufactured. And Mr. Bolz responds, a question from his own attorney, I think so, I believe so. Defendant's own expert, Dr. Rose, in his report, talks about how the products were made according to the 343 and 466 patents. So there was plenty of testimony to give the link between the patents and the structure of the label. Remember, the court also denied... There were two different types of accused of lies, the pre-April 2001 products, and different process one and process two products. Yes, two different patents. But remember, Dr. Zahn looked at each patent. He looked at the 466 patent. He read through it, and he said, this claims a method for manufacturing labels that result in a hole between the conducting layers free of dielectric material. He then looked at the 343. Same conclusion. He said the only difference between those two patents is how the hole is made. If you go to the directive verdict stage of the case, and this is after plaintiffs have put out their evidence, defendants argued again. Plaintiffs had not met their evidentiary burden. Dr. Zahn hadn't looked at the accused products. Therefore, you should stop the trial. The court heard the argument, and again, stated the testimony is sufficient at this point for us to continue the matter. Here's the third time that the court rejected exceptional case finding. At the judgment as a matter of law stage, after both sides had put in their case, the court had heard the testimony of Dr. Zahn, had heard the testimony of Dr. Rose. The court denied the J-Mall motion, and for a third time, rejected the exceptional case finding. Defendants argued, we talked about this earlier, that the label that Dr. Zahn had deconstructed, examined, and found a through-hole was manufactured by a predecessor company, Halter Switzerland. Therefore, he examined the wrong patent. They also argued that Dr. Zahn did not conclude infringement by simply looking at patents that defendants admitted they had generally made their products under. But again, after hearing all of the evidence, which importantly, did not conclude any evidence from the defendants, affirmative evidence that their products did not contain the through-holes, the court stated, quote, the evidence is sufficient to go to the jury on the issue of infringement. Now, this court's jurisprudence demonstrates that under these facts, this case cannot be objectively baseless. We know this from the Brooks Furniture and Medtronic decisions. In fact, in Medtronic, this court held that a party is entitled to rely on favorable rulings from the trial court as an indication that its case is objectively reasonable. And those rulings can act as a shield against sanctions so long as the party's success is not due to any sort of false or misleading representation of the evidence. Defendants have no answer for Medtronics. They didn't even mention it in their response brief. And the reason why? Three times, the plaintiffs laid bare before the district court their evidence and their theory of infringement. Three times, the district court agreed and allowed the case to go forward. In fact, the court allowed the case to go to the jury for resolution. On this basis alone, the district court's decision should be reversed. Because a case cannot be exceptional unless it is also determined to be objectively baseless. This case is not. I'd like to talk a little bit about the subject of bad faith to prompt the court's analysis. If the court were to find that it was not objectively baseless, you wouldn't reach that point, correct? You would not. But I want to consider it because I've got a good feeling my opponent will argue that it was subject to bad faith. This record doesn't support finding bad faith. Nowhere in the court's exceptional case finding does it say that the decision not to inspect the labels was somehow motivated by bad faith, somehow motivated by plaintiff's belief that it would somehow adversely impact the case, or it was motivated by an intent to somehow mislead the jury. That's not there at all. And it can't be. And such a conclusion, I don't think, is plausible. Because whether or not there was a through-hole in the accused product remained an open issue throughout the duration of the trial. It wasn't decided until the jury returned its verdict. Defendants never put out affirmative evidence that the accused product did not have a through-hole. Their own expert, Dr. Rhodes, admitted he did not know whether or not there was a through-hole in those labels. That was the ultimate issue for the jury to decide. This case does not fall under the rubric of other cases where the court has found that there was bad faith. And if you look at those cases, one constant that you see is where the plaintiff continues to push the case, even though they are confronted with evidence showing that the case is frivolous. And that's simply not what happened here. There's also no reason to infer bad faith because plaintiffs purportedly inspected the wrong label. As I said before, that was a disputed issue throughout the duration of the trial. Again, it did not arise until the eve of the trial when the defendant claimed that the label was manufactured by Altec Switzerland. Even if that's the case, let's assume they got it wrong, it was an Altec Switzerland label. Defendants affirmably claimed throughout that Altec Belgium made the same labels as Altec Switzerland, their predecessor company. And that was the crux of their last use defense. Triage has one in the same. No difference in terms of who we are or what product we make. In fact, at the summary judgment stage, defendants say, here, it is undisputed that Altec Belgium purchased equipment and other assets from Altec Switzerland and continued to manufacture the same resident labels which were previously manufactured by Altec Switzerland. And as Your Honor asked earlier, what were the books? Well, there were plenty of books. You had the testimony of the CEO of Altec Belgium. You also had answers to requests for admission. And these requests were very straightforward. Admit that there's a through-haul in your product. And the response was, we make them generally according to the 466 and we make them generally according to the 343. Mr. Parmesan, I better interrupt you because we've exhausted your time. Let's see what the other side has to say. Thank you, Your Honor. Mr. Granger. Good morning, Your Honor. May it please the Court. Checkpoint has not established that the District Court did not commit clear error when she found this is an exceptional case. The District Court found facts. She found that Checkpoint never looked at the accused product. That Checkpoint's expert never looked at the accused product. Wasn't that her only ground for finding an exceptional case and was on a footnote? And is that enough? Your Honor. Are there other ways to have a reasonable belief in infringement? Your Honor, let me first... The footnote is where she primarily found this case exceptional. That footnote is well documented with her findings of fact, the facts that I've just indicated. And one fact... The facts that she found, Your Honor, were that Checkpoint's expert, Dr. Zahn, did not test the Alltag product to support their claim. Dr. Zahn only examined Alltag AG Switzerland's product, not the accused product. Dr. Zahn's factual assumptions were derived from his review of Alltag's patents rather than the actual accused product. That's still one fact, that he didn't examine the accused product. That's correct, Your Honor. Now in response to your other question, we don't deny that you don't have to look physically at the accused product if there is other probative evidence of the product. In this case, there was no other probative evidence. What Dr. Zahn relied upon was Alltag's licensors' patents, which Alltag said, we generally make. Those are method patents. And those method patents say, to make the product, you bring the conductive layers together... In his argument, Mr. Pomerchand, you heard, obviously, focused extensively on the trial court's denial of various motions during the trial and pre-trial. And that does seem to make a fairly good case for the proposition that at least the court didn't think that the case was meritless based on the evidence that was being presented. I heard counsel's argument, and I think we've addressed every... The motions that we're talking about are Rule 50 motion and the Daubert motion. Rule 50 motions are discretionary with the judge. The Farrell case, which we cited from the 11th Circuit, and Wright and Miller says that district court judges are taught that they should let a case go to the jury unless it's a plaintiff's case. At a Rule 50 motion, the judge, Judge Becker, was not allowed to weigh the evidence. She was not allowed to weigh the credibility of the witnesses. That's the test for Rule 50. After a six-year litigation, two-week trial, she took the position and set forth in Wright and Miller, let the case go to the jury because, at worst case, if they come back and I disagree on a judgment, I'll revert if I can find. The Daubert motion was heard in the morning, the first day of trial, and the judge found that she was going to let Dr. Zahn testify based on the representations of Checkpoint's counsel that he was going to compare the claims of the 555 patent to the patents. That was another discretionary motion. One thing I would like to make clear, based on the counsel's argument, the evidence of record was clear that the Checkpoint never had the accused product. They raised this issue about the serial numbers. That was raised in the reply brief, and we didn't have a chance to respond to that. That is not a correct statement of fact. Mr. Bowles, the CEO of Alltag, stated to the court and to the jury that these were not serial numbers on the product. This was a dummy barcode that is at A2299 through A2301 because we didn't have a chance to do that. The evidence was that when we purchased some of the equipment, we purchased these fake barcodes because what they do is they put these tags on merchandise. Is this in the record, or are we arguing facts? What I am arguing is facts. We did not have an opportunity to address this in our opening brief because it was raised in the reply brief. I want to make it clear that there is no such thing as a serial number which you would indicate as well. But it's in the record that's physically before it. That's correct. It's at A2299 through A2301. I'd like to move to this issue of the bad faith argument. I think on the bad faith and the objectively baselessness, this court's decision in Alltag v. PPG is directly on point. In that case, this court found the case exceptional when the patentee never looked at the accused product. The patentee had the accused product. They never looked at it. This court found that that was, they didn't say objectively baseless. They said baseless. And they said just because the district court judge didn't make a specific finding that it was baseless, they said you could infer from the facts that it was baseless. Similarly, in the PPG case, the court found that there is an inference of bad faith. And the court found bad faith when the patentee never looks at the accused product, never compares the claims of the patentee to the accused product. You're telling us it was bad faith when Dr. Zahn looked at the product made in Switzerland and then didn't look at what we are told was the same product on the same equipment made in Belgium, that that was presented to the jury in bad faith? What was bad faith was for Checkpoint never to give Dr. Zahn the actual accused product. He had a product that was pre-1995 made by another company, which the undisputed evidence of trial was that tag was different. Checkpoint's own witnesses. Sorry, another company? It had the same name, right? When you say it was another company, it was a different corporation, right? It was a different corporation. Correct, Your Honor. It was a different corporation. In a different country. Different country. On the same equipment, we're told. And I haven't seen that the record says that it wasn't, that the equipment just was not simply transferred, that they bought it. Your Honor, the evidence was that the equipment, some of the equipment, was bought by Alltag Belgium and Alltag Switzerland. The evidence of record and the only evidence from Mr. Bowles was, sorry, not Mr. Bowles, there were about three people that testified, that the tags that Alltag Belgium made after they bought the equipment changed. Mr. Rizzotti, Checkpoint's own chief engineer, said between the early 1990s and 2000, he tracked six changes in the structure of the Alltag product. Mr. Bowles said we were always changing the product. Mr. Bleek said the same thing. Checkpoint's in-house counsel, general counsel, testified that he knew when this case was brought, that the Alltag product had changed from the Alltag Switzerland product. So Judge Tucker's findings of fact are not clearly erroneous. Checkpoint is trying to argue, But we're not deciding whether they were clearly erroneous. We're deciding whether there was reckless disregard of the truth, bad faith, litigation. Much more complex issues than whether an adequate case was presented. It's clear the jury did not accept their verdict. They accepted your position. I'm trying to understand at which point the flaw in the evidence that didn't convince the jury was bad faith on the part of the petitioner. What was bad faith was that they never got the accused product from the start of the case before it was filed, during discovery, or at trial. That is a fundamental thing that a patentee does. They get the accused product. They get it from the other side. Alltag gave them the product. They never explained why they didn't do it. So our position, Your Honor, is getting to the objectively baselessness and subject it to bad faith. Is your position that it was deliberately withheld from the expert? We don't... Checkpoint has never said why they didn't give the Alltag product to the expert. We don't know. What Judge Tucker found... It didn't come out of the trial? Excuse me? That wasn't an issue? That was not... It was never brought out as to why he didn't get the product. But you're asking us to assume that it was deliberate. No, Your Honor. What we're saying is that when the patentee never gets the accused product and never compares the claims to the accused product, that is objectively baseless. That is a fundamental thing that you do in a patent case. You get the accused product, and then you inspect it, and then you compare the claims to the accused product, whether you do it to the physical product or whether you take a deposition. Somebody from Alltag can say, How is your product made? What is your product structure? How does your product work? They never did any of that. And that's why the district court found, relying on this court's decision in Alltag v. PPG, that it was objectively baseless. They just did not do it. How about subjective? Subjectively baseless. Your Honor, I think the test is objectively baseless based on Mark tech. And so I think, in other words, subjective basis doesn't matter. Subjective baselessness doesn't matter? What they thought? Under this court's precedent, you're looking at the objectively baseless and subjective bad faith. And so the objectively baseless is, could they have believed they could have proved a case if they didn't have the accused product? If they never compared the claims to the accused product, that is the epitome, in our view, of objectively baseless. That's what every patentee does in every infringement suit. They just didn't do it. They never explained why they didn't do it. And maybe it was a mistake. I don't know. But what happened is they didn't do it. And as Judge Tucker found, the defendant should not be forced to go through all of the time and expense of a litigation when they didn't do the most fundamental thing you do in a patent case. And I keep on coming back to Alltag v. PPG because I think that case is directly on point. They said they didn't know until two days before the jury trial started that there was an issue as to whether the product had changed between that which was made in Switzerland and that which was made on, they apparently thought, the same equipment in Belgium. Your Honor, I cannot... There was no evidence as to what they knew at trial. But you're telling us that they did know. I mean, if there was no evidence, then you're asking us to assume that they knew and deliberately proceeded without such investigation. They did proceed without such investigation, Your Honor. That's what Judge Tucker found. And that's our position. I don't know why they didn't do it because they never explained it. That was not in evidence at trial. It was not at the exceptional case hearing. They didn't explain why they didn't get it. All we know is that the evidence at trial was they never had the accused product and they never compared the claims to the accused product. And that has to be objectively baseless and subjective bad faith. What they try to say is that, well, we had our expert look at two patents. Those two patents were based on an objection to an admission. But in that objection, there's a statement outweighing the objection. All tech generally makes its products pursuant to the two method patents. And checkpoints expert witness, Dr. Zahn, says, do you know what they meant by generally? He said no. This court's decision in L&W versus Sheertech and Forest Labs versus Abbott says you cannot compare patent claims to another patent. If there would have been testimony as from an all-tech witness during a deposition or what have you that, yes, in this patent we do this, we do this, we do this, maybe then you might have a situation that it's not an exceptional case. But that's not what they did here, Your Honor. They had their expert basically because he didn't look at the accused product say, I can look at some patents. And that's not, this court should not make precedent that a patentee can prove infringement by comparing a patent claim to a patent which a patentee says we generally use. Because patents have, as this court is aware, has numerous specific descriptions, general descriptions. That's what this court held in L&W versus Sheertech where the district court found summary judgment because the alleged infringer said our products are covered by this patent and our products use this patent. This court said that's not enough because the patent specification has general descriptions and specific. And they said you have to have some linking testimony. In this case, there was no such linking testimony. Your Honor, I'd like to address the Medtronix case for one second. That case, Your Honor, does say, one fact that this court can consider is whether a motion for summary judgment was denied or a JML was denied. Medtronix is completely different from this case. Medtronix does not stand for the proposition that you can never have an exceptional case if a motion for summary judgment was denied or JML was denied. That's not the law. In Medtronix, this court said in one paragraph, the jury found infringement. The district court judge reversed that on a JML. That was in one paragraph. This court then went on for 10 or 11 pages of the decision and looked at what the district court found to be the basis for exceptional case. The claim construction and acts of misconduct. And this court went through each of them. They said that does not arise to the level of exceptional case. So we don't disagree that that isn't a factor that this court can consider. But it is not dispositive that a case can't be exceptional because a motion for JML was denied and that motion is a discretionary motion of the court. Lastly, Your Honor, this Latches argument. What they are arguing about the product being... Excuse me, my time is up, Your Honor. Yes, finish the sentence, the short sentence. The Latches argument is one sentence in a reply brief on summary judgment. It was contrary to the evidence of trial. The evidence of trial was that the all-tag Switzerland tag and the all-tag Belgium tags were different. Thank you, Your Honor. Thank you, Mr. Chairman. Let's see, Mr. Parbashan, a couple of minutes for rebuttal. Thank you, Your Honor. I just heard my opponent say that maybe it would be a different case if there was a link between the patents and how the products were actually made. I think I heard that correctly. He said that that case would then fall under Sure Tech. And let me go for a second. Sure Tech, the plaintiff lost that case. The court granted summary judgment. That was it. Here, the result of Sure Tech, my opponent is to be believed, is that we should be sanctioned over $6 million. That's not the case with Sure Tech. But when he said that it would be a different case if there was a link, I only have to remind him of the answer his own witness gave upon questioning the product. And so the question was, so if somebody wanted to understand, this is the CEO testifying, so the question is, so if somebody wanted to understand how Alltech makes its product, is it enough to just read the patent? Does the patent tell you everything about how you actually make your product? The answer, I believe, I think so. That's the link. But there are others. There's the answers to requests for admission. There's the argument throughout the duration of the litigation, seven years, that there's no difference between Alltech Switzerland, No Alltech Belgium. There's no difference in how they make their resident labels. They talk about this issue that the evidence at trial showed that Dr. Zahn had inspected the wrong label. Well, first of all, it was disputed. Evidence went in supportive of Dr. Zahn's testimony that it was an Alltech Belgium label. Perhaps it just is a coincidence that Alltech Switzerland and Alltech Belgium both make the product according to the same patent. Maybe it's a coincidence that Alltech Switzerland, when it was sued by Checkpoint, Alltech Switzerland basically picks up the company, moves it across the border, moves all the machinery, continues making the same labels. Maybe it's just a coincidence that they use the same products with the same serial numbers to make the same labels. But again, that's why it was a disputed issue at trial. That was all circumstantial evidence. And that's what went in. And that's what the court, three times rejected their argument that you used the wrong label. I'm going to have to interrupt you. We're out of time. But I believe we have the argument fixed.